IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

SHERWIN D. DUCKETT

vs.

UNITED STATES OF AMERICA

Civil No. AW-02-528
Criminal No. AW-97-0393

## MEMORANDUM OPINION

Presently before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [55-1]. The Government has filed an Opposition to Petitioner's Motion [59-1]. Petitioner submitted a Reply to the Government's Opposition [60-1]. The Court has reviewed the entire record, including the criminal proceedings, as well as the pleadings and record with respect to the instant Motion. With respect to Petitioner's claim of ineffective assistance of counsel, the Court will grant Petitioner an evidentiary hearing in order give the Court more information upon which a decision can be made. For all other claims in the Motion, and for the reasons below, the Court will deny the Motion. No hearing for these claims is deemed necessary. *See* Local Rule 105.6 (D. Md.).

### I. Background

*A.     Factual Background*

The majority of facts in this case are undisputed. On April 18, 1997, Officer Piper of the Capital Heights Police Department arrested Petitioner for possession and distribution of a controlled substance. Earlier, Officer Piper had been patrolling a park in Capitol Heights on foot. Officer Piper

part, he insinuates that the drug evidence did not appear until Officer Piper searched the grassy area since other officers had not previously found anything. (*Id.* at 4, 12; Pet'r.'s Reply at 4.)

Petitioner challenges Officer Piper's characterization of the events that occurred, specifically, that the unidentified males seen by Officer Piper were all friends or family of Petitioner. (Pet'r.'s Mot. at 12-13.) Specifically, Petitioner claims that the unidentified male in the car that drove down Tunic Avenue was actually Petitioner's brother. (*Id.*) The other two unidentified males, according to Petitioner, were friends, one of whom needed change for five dollars. (*Id.* at 13.) Petitioner argues that this corroborates Officer Piper's testimony that objects were passed. (Pet'r.'s Reply at 4.) Petitioner also states that what appeared to be a drug transaction between Petitioner and one of the unidentified males was actually a handshake, which was a common form greeting between the two. (*Id.*)

## B.   *Procedural Background*

On April 9, 1998, after a two-day jury trial, Petitioner was convicted of both Count One, Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1), and Count Two, Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(a)(1). On July 6, 1998, Petitioner was sentenced to 235 months imprisonment after the Court agreed to a downward departure of one offense level. On September 21, 2000, the United States Court of Appeals for the Fourth Circuit upheld Petitioner's conviction and sentence in an unpublished opinion.

On February 19, 2002, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. In this Motion, Petitioner claims ineffective assistance of counsel, misapplication of the sentencing guidelines, unfair litigation of his Fourth Amendment claims at trial, and a defective indictment. Petitioner also claims that his prior drug convictions

should have been consolidated for sentencing purposes, and lastly, raises an *Apprendi* challenge to his sentence. Each of these claims are addressed below.

The Government opposes Petitioner's Motion on the grounds that Peitioner did not receive ineffective assistance of counsel, that any perceived deficiencies in counsel's representation are attributable to reasonable trial strategy, the sentencing guidelines were not misapplied, Petitioner's Fourth Amendment issue was fairly litigated, and *Apprendi* challenges do not apply to prior convictions. Accordingly, the Government urges the Court to deny Petitioner's Motion.

## II. Discussion

### A. *Ineffective Assistance of Counsel*

Petitioner claims that he was denied his right to effective assistance of counsel. (Pet'r.'s Mot. at 10.) Specifically, Petitioner asserts that trial counsel failed to call three eyewitnesses to the events of April 18, 1997. (*Id.*) According to Petitioner, these eyewitnesses would corroborate Petitioner's identification of the males seen by Officer Piper and confirm that Petitioner was not dealing drugs. (*Id.* at 12-13.) Petitioner has included affidavits from two of these witnesses in his Petition. (*See* Aff. of Robert McClung and Richie Garner.) Both of these affiants state that they were talking with Petitioner in front of 34 Tunic Avenue on the night of April 18, 1997. (Aff. of Robert McClung at 1; aff. of Richie Garner at 1.) They further state that Petitioner's brother drove by in a Lincoln and Petitioner went to talk with him. (Aff. of Robert McClung at 1; aff. of Richie Garner at 1.) They also state that a friend later approached the group and requested change for five dollars. According to their statements, Petitioner shook hands with the friend and gave him the requested change. (Aff. of Robert McClung at 1; aff. of Richie Garner at 1.) These witnesses also state that Petitioner was not selling drugs on the night of April 18, 1997 and that the only persons to go near the grassy area

beside the fence were the Capitol Heights police officers. (Aff. of Robert McClung at 1-2; aff. of Richie Garner at 1-2.) Petitioner claims that although he told counsel of these witnesses and asked that they be called to tell his side of the story, counsel failed to call them. (Pet'r.'s Mot. at 12-13.) While Petitioner does concede that counsel's investigator did in fact investigate the case, interview the witnesses, and created a video re-enactment of the scene which was played for the jury at trial, Petitioner states that anything less than calling the witnesses to testify was ineffective, since many of Officer Piper's allegations went unrefuted. (*Id.*)

Petitioner also claims that his trial counsel was ineffective for preventing Petitioner from taking the stand in his own behalf. (*Id.* at 14.) Petitioner has also provided a sworn affidavit in which he states that he advised his trial counsel, Victor Houlon, that he wished to testify on his own behalf. (Aff. of Sherwin Duckett at 2.) He also states that he never told Mr. Houlon that he did not wish to testify, and further that he was not present when Mr. Houlon informed the Court at sidebar that he would not be testifying. (*Id.* at 2-3.) Accordingly, Petitioner states that his rights were violated when his counsel prevented him from taking the stand in his own defense. (Pet'r.'s Mot. at 14.)

The Government opposes Petitioner's assertions on the grounds that Petitioner's representation was not ineffective under the *Strickland* test. (Gov't.'s Opp. at 5.) It claims that counsel's decisions not to call specific witnesses and for Petitioner/Defendant not to testify were tactical and part of reasonable trial strategy. (*Id.* at 7-10.) It calls the Court's attention to evidence within the record that indicates the same, such as the fact that Petitioner/Defendant had two prior drug-related convictions and that counsel likely did not want this information expounded upon during cross-examination. (*Id.* at 9-10.) Additionally, the Government contends that since counsel had investigated Petitioner/Defendant's witnesses and made a video re-enactment of the events, it

6

was obvious that counsel's strategy was to attack the credibility of the Government's case and avoid putting on testimony of the three alleged eyewitnesses. (*Id.* at 7-8.)

The standard for proving ineffective assistance of counsel is (1) a showing that counsel's performance was deficient and (2) that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); *see also Poyer v. Murray*, 964 F.2d 1404 (4th Cir. 1992), *cert. denied*, 506 U.S. 958 (1992). The Petitioner must show that "his attorney's representation fell below an objectively reasonable performance." *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). This evaluation must be "highly deferential" so as not to "second-guess" the performance of the trial attorney and in order to eliminate the distortions of hindsight. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Moreover, courts must not disturb decisions by counsel that "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164 (1955)). The Government urges the Court to defer to these matters of trial strategy and deny Petitioner's Motion.

Here, however, the record is unclear as to counsel's trial strategy. The Court, at this point, cannot infer counsel's strategy from a record that has not been adequately developed and is not sufficiently clear. *Sneed v. Smith*, 670 F.2d 1348, 1354 (4th Cir. 1982). In *Sneed*, the Fourth Circuit held that it was improper for the district court to simply adopt the State's "merely speculative theory of why defense counsel acted the way he did" and deny petitioner's claim of ineffective assistance of counsel. *Id.* There, an evidentiary hearing was necessary to determine whether trial counsel "would agree or disagree with the State's independent analysis and speculation concerning his mental processes and trial strategy." *Id.* at 1355. Here, the Court understands that Petitioner's primary counsel at trial, Victor Houlon, is deceased. However, to the Court's knowledge, co-counsel

Mr. Richard Finci, is capable of providing information regarding the defense strategy and can address the allegations made by Petitioner. The Government has not supplied an affidavit from Mr. Finci or any other persons familiar with trial counsel's strategy, and therefore has not provided anything more than a "merely speculative theory of why defense counsel acted the way he did." *Id.* at 1354. The Court finds that the record has not been adequately developed to the point at which the Court can confidently make a determination. Accordingly, the Court will grant Petitioner an evidentiary hearing, at which time the parties will have the opportunity to present additional evidence and assist the Court in this matter. Petitioner will furthermore be appointed counsel for the purposes of this hearing.

### B.   *Misapplication of Sentencing Guidelines*[1]

Petitioner contends that the Sentencing Guidelines were misapplied at his sentencing. (Pet'r.'s Mot. at 16.) He claims that the base offense level of 34 was error since he was convicted of possession of less than 5 grams of cocaine base. (*Id.*) Petitioner cites 21 U.S.C. § 841(b)(1)(B)(iii) and states that he was incorrectly sentenced under this subsection because it refers to a cocaine base quantity of 5 grams or more, and the "offense level 34 of the career offender provision was erroneous." (Pet'r.'s Mot. at 17.) Petitioner, however, is confusing his conviction with his sentence.

A jury convicted Petitioner of one count of distribution in violation of 21 U.S.C. § 841(a)(1) and one count of possession with intent to distribute, also in violation of 21 U.S.C. § 841(a)(1). Since Petitioner was found with less than 5 grams of a schedule I controlled substance, the applicable

---

[1] Petitioner frames this issue in terms of ineffective assistance of counsel. However, since the Court finds that the Sentencing Guidelines were not misapplied, this issue is treated separately.

maximum penalties for these violations is found in 21 U.S.C. § 841(b)(1)(C). When these violations are committed "after a prior conviction for a felony drug offense has become final," the maximum penalty is 30 year imprisonment. 21 U.S.C. § 841(b)(1)(C). Therefore, Petitioner was eligible for a combined maximum penalty of 60 years imprisonment for both violations.

At sentencing, the Court determined, from the Presentence Investigation Report, that Petitioner was a career offender within the meaning of the sentencing guidelines. The guidelines state that a defendant is a career offender if the instant conviction is for a controlled substance felony and the defendant has at least two prior felony controlled substance felonies. *See U.S.S.G. § 4B1.1(B).* The Government filed an information pursuant to 21 U.S.C. § 851(a), allowing Petitioner to be sentenced as a career offender. Petitioner had one 1995 conviction for Possession with Intent to Distribute and one 1993 conviction for Distribution of a Controlled Dangerous Substance. Petitioner also had a 1993 conviction for Possession of Cocaine. Accordingly, Petitioner's career offender status was proper. *See id.*

When a defendant is sentenced as a career offender, the offense level shall be 34 if this number is greater than the offense level otherwise applicable. *Id.* In Petitioner's case, the offense level of 34 was greater than the level otherwise applicable for his convictions, and therefore a level of 34 properly applied. A career offender's criminal history category is VI in every case. *Id.* Therefore, with a criminal history category of VI and an offense level of 34, Petitioner's sentencing guideline range was 262-327 months imprisonment. However, Petitioner's counsel persuaded the Court that these convictions did not completely represent Petitioner's history. The Court granted Petitioner one downward departure and sentenced Petitioner to the lower end of the guideline range: 235 months imprisonment for both convictions. This term is well within the applicable guideline range and far below the maximum penalty. Petitioner's claim is therefore denied.

9

### C. *Counsel's Failure to Argue the Law at Sentencing*[2]

Petitioner claims that his trial counsel "failed to argue the relevant law applicable to Duckett's downward departure" at sentencing. (Pet'r.'s Mot. at 19.) Petitioner faults counsel for not obtaining "a further downward departure of his career offender status." (*Id.*) As stated previously, however, counsel did in fact persuade the Court to grant Petitioner a downward departure and sentence Petitioner to the lower end of the guideline range. The facts contradict Petitioner's claim here, particularly since Petitioner has failed to present any credible factors that counsel allegedly neglected that would have entitled Petitioner to further departure. (*See id.* at 20.)

Petitioner also states that trial counsel failed to inform the Court of its power to grant Petitioner further downward departures. (*Id.* at 19-20.) This argument, however, presumes that the Court needs to be reminded of its powers under the law. Since the Court granted Petitioner a departure by one level downward it is clear that even if trial counsel failed to notify the Court of its discretionary powers, that such error was inconsequential, since the Court is aware of its lawful powers. Petitioner's claim will accordingly be denied.

### D. *Fourth Amendment Claim Not Fairly Litigated at Trial*

Next, Petitioner makes the claim that his motion to suppress the government's evidence at trial was not fairly litigated. (*Id.* at 23-24.) While Petitioner fails to describe exactly how this proceeding was conducted unfairly, he does claim that the "District Court failed to make a factual finding" and therefore a proper decision was never reached. (*Id.* at 24.) Petitioner urges the Court to vacate this decision and grant him a new trial.

---

[2]As with Part B, Petitioner raises this matter within his claim of ineffective assistance of counsel. However, since the Court finds that this claim is frivolous, it will be treated separately.

The Government responds by claiming that Petitioner's assertions are "not supported by the record nor the law." (Gov't.'s Opp. at 12.) The Government has attached the Order issued by this Court on February 24, 1998, denying Petitioner's Motion to Suppress. (Gov't.'s Ex. 5.) Indeed, this Court issued the Order proffered by the Government, which was based on "...a hearing in open court, and the Court having heard argument by counsel for all parties and the Court having considered the entire record...." (*See id.*) Petitioner's argument is therefore without merit. The Court arrived at its decision after careful consideration of all the evidence. Accordingly, Petitioner's request to vacate the decision will be denied.

### E.   *Consolidation of Prior Convictions*

Petitioner alleges that the decision of *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276 (2001) affected a change in the law, rendering Petitioner's sentence unconstitutional. (Pet'r.'s Mot. at 24.) *Buford* acknowledged that prior sentences can be "functionally consolidated" for sentencing purposes, pursuant to U.S.S.G. § 4A1.2(a)(2). *Id.* at 61, 121 S.Ct. at 1278; *see also U.S.S.G.* § 4A1.2(a)(2). Since a defendant will receive a higher criminal history category for each prior sentence, a defendant is eligible for a lighter sentence if his or her prior sentences are consolidated and treated as only one. *United States v. Allen*, 50 F.3d 294, 296 (4th Cir. 1995), *U.S.S.G.* § 4A1.2(1)(a). Petitioner claims that this Court erred when it insisted upon a formal order of consolidation in Petitioner's case, since functional, as opposed to formal, consolidation was approved in *Buford*. (Pet'r.'s Mot. at 24.) However, there are two problems with Petitioner's argument.

First, the issue of prior sentence consolidation was not an issue in Petitioner's case. As discussed above, Petitioner was sentenced as a career offender. *See U.S.S.G.* § 4B1.1. Accordingly, his criminal history category was automatically VI, *see U.S.S.G.* § 4B1.1, and his offense level was

automatically 34, *see U.S.S.G.* § 4B1.1(B). The resulting guideline range was recommended by the Government, but the Court granted Petitioner a downward departure, resulting in a lower guideline range. Petitioner therefore received no change in his guideline range or sentence as a result of prior sentences, since Petitioner's career offender status was derived from his prior *convictions*. Consolidation, regardless of functional or formal, would not have altered his sentence, since a career offender status supercedes any calculation of a defendant's criminal history category with prior sentences. *See U.S.S.G.* § 4B1.1. Petitioner has confused these two separate means of calculating a defendant's guideline range.

Second, even if his prior sentences were a factor in his instant sentence, Petitioner offers no evidence or facts that would relate his prior sentences. Petitioner merely states that the Court erred by not granting his request for consolidation and insisting on a formal order. (Pet'r.'s Mot. at 25.) In order for prior sentences to be considered related, the offenses must have been (A) committed on the same occasion, (B) part of a single common plan, or (C) consolidated for trial or sentencing. *U.S.S.G.* § 4A1.2 n.3. Since Petitioner has not proffered any reasons why these categories would apply to him, his claim must fail even if the issue of consolidation was a factor in his case.

### F.   *Defective Indictment*

According to Petitioner, his indictment was defective because it did not include the drug quantity nor the statutory penalty. (Pet'r.'s Mot. at 31.) Petitioner argues that these defects deprived the Court of jurisdiction to hear his case. (*Id.* at 30-31.) Petitioner, however, is mistaken. "[D]efects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, ---U.S.----, ----, 122 S.Ct. 1781, 1785 (2002). But in any case, Petitioner was convicted by a jury of possession and distribution involving 4.90 grams of cocaine base, below the lowest drug quantity threshold available. *See* 21 U.S.C. § 841(b)(1)(C). Petitioner was sentenced under this

subsection (prohibiting any unspecified quantity), which provides for the lowest penalty of all cocaine possession and distribution quantities. *Cf.* 21 U.S.C. § 841(b)(1)(A) and (b)(1)(B) (both of which assign higher penalties for greater quantities of a prohibited drug). Therefore, even if the allegedly defective indictment deprived the Court of jurisdiction, no charging document could have provided for a lighter sentence under 21 U.S.C. § 841. There is no case law to support Petitioner's contention that a failure to state the penalty in the indictment is an actionable defect. Petitioner's claim will accordingly be denied.

### G.     *Sentencing in Violation of Apprendi v. New Jersey*

Petitioner claims that his sentence was determined in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000). *Apprendi* stands for the principle that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362-63. Petitioner was convicted of two counts of violating 21 U.S.C. § 841. Petitioner does not specifically state what violated the *Apprendi* rule. (*See* Pet'r.'s Mot. at 31-33.) Petitioner simply argues that his sentence was violative of *Apprendi* and asks the Court to grant habeas relief. The Court, after careful review of this case and the record, finds no sentencing factors in violation of *Apprendi*. The Court denies Petitioner's claim because the rule in *Apprendi* is not retroactive, and even if it was, no *Apprendi* error was committed in Petitioner's case.

#### 1. *Apprendi* does not apply retroactively.

The Court need not delve into Petitioner's *Apprendi* claim because the Fourth Circuit has "held that *Apprendi* claims may not be raised on collateral review." *San-Miguel v. Dove*, 291 F.3d 257, 258 (4th Cir. 2002) (relying on *Burch v. Corcoran*, 273 F.3d 577, 584 (4th Cir. 2001); *see also*

*United States v. Sanders*, 247 F.3d 139, 146, 151 (4th Cir. 2001). District Courts should properly dismiss *Apprendi* claims when raised in § 2255 habeas petitions, since the rule announced in *Apprendi* does not apply retroactively to cases that have already been decided. *San-Miguel*, 291 F.3d at 260.

### 2. Petitioner's sentencing was not a violation of *Apprendi*.

A jury convicted the Petitioner of distribution of cocaine base and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841. At sentencing, the only factors used to increase Petitioner's sentence were his prior felony controlled substance convictions. *Apprendi* states that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362-63. Since *Apprendi* does not apply to "the fact of a prior conviction," no prohibited sentencing factors were used in Petitioner's case. Additionally, Petitioner was sentenced below the statutory maximum of 30 years. As discussed previously, only factors that enhance a defendant's sentence *beyond the statutory maximum* offend *Apprendi*. Because Petitioner's sentence was not enhanced beyond the statutory maximum, an *Apprendi* challenge cannot be maintained. This applies equally to Petitioner's *Apprendi* challenge to his indictment, (Pet'r.'s Mot. at 29). *United States v. Cannady*, 283 F.3d 641, 649 (4th Cir. 2002). The Court will therefore deny Petitioner's *Apprendi* claim.

### III. Conclusion

For the reasons discussed above, the Court finds that Petitioner has failed to sufficiently demonstrate that his claims B through G have merit. His Motion, with respect to these claims, will

be denied. With respect to his claim of ineffective assistance of counsel, the Court grants Petitioner an evidentiary hearing to assist the Court in arriving at an informed decision. Furthermore, the Court will order counsel to be appointed to Petitioner for the purposes of this hearing. A separate Order consistent with this opinion will follow.

8-19-02
Date

Alexander Williams, Jr.
United States District Judge